# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

DAVID WHITMORE,         )
                            )
      Plaintiff,         )
                            )
v.                       )         Case No. CIV-13-113-M
                            )
MIKE ROGERS et al.,        )
                            )
      Defendants.      )

## REPORT AND RECOMMENDATION

Chief United States District Judge Vicki Miles-LaGrange has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b).  Defendants have moved under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. No. 41) to dismiss certain claims in Plaintiff David Whitmore's Amended Complaint (Doc. No. 37) brought under 42 U.S.C. § 1983.  Plaintiff, a state prisoner appearing pro se, has filed his Response (Doc. No. 51), and the motion is ready for decision.  Further, Plaintiff has filed a motion seeking a temporary restraining order or preliminary injunction (Doc. No. 61), to which Defendants have responded (Doc. No. 64) and Plaintiff has filed a reply (Doc. No. 69).  Plaintiff additionally has filed a Motion for Leave to Supplement his Amended Complaint (Doc. No. 70).

Having considered the parties' arguments and pleadings, the undersigned recommends that Defendants' motion to dismiss be granted in part and that certain of Plaintiff's claims be dismissed without prejudice.  It is additionally recommended that Plaintiff's pending motions be denied.

## PLAINTIFF'S CLAIMS

In his Amended Complaint, Plaintiff brings claims against seven Defendants in both their individual and official capacities: Mike Rogers, discipline hearing officer; Kelli Curry, kitchen supervisor; Crystal Durfey, disciplinary hearing investigator; Becky Guffy, warden's assistant and law library supervisor; Brandy Page, disciplinary hearing investigator; Janet Dowling, Deputy Warden; and Debbie Morton, the Director's Designee at the Oklahoma Department of Corrections ("ODOC").[1]  *See* Am. Compl. (Doc. No. 37) at 1-2, 5-6.[2]

Plaintiff currently is incarcerated at Oklahoma State Penitentiary, but the claims of the Amended Complaint are premised on events occurring when Plaintiff was housed at James Crabtree Correctional Center ("JCCC") in Helena, Oklahoma.  *See id.* at 2-4, 7-19; Notice (Doc. No. 39). All Defendants are or were ODOC employees, either through their positions at JCCC or with ODOC directly.  *See* Am. Compl. at 1-2, 5-6; Defs.' Mot. to Dismiss (Doc. No. 41) at 5.

---

[1] Specifically, Defendant Morton served as the ODOC Director's Administrative Review Authority Designee.  *See* Defs.' Mot. to Dismiss at 5.  Defendants indicate that Defendant Morton is no longer in that position.  *Id.*  If accurate, the current Director's Designee would need to be identified and substituted for Defendant Morton on any remaining official-capacity claims in any applicable later proceedings.  *See* Fed. R. Civ. P. 25(d); Am. Compl. at 5.  Similar substitution would also need to be considered as to official-capacity claims against any other Defendants who are named as "public officers" but no longer are employed by ODOC.  *See* Fed. R. Civ. P. 25(d); Am. Compl. at 1-2, 5-6.  In this Report and Recommendation, the undersigned refers to Defendants as they are identified in the caption.

[2] Citations to documents filed with the Court use the page numbers assigned by the Court's electronic filing system.

Through this lawsuit, Plaintiff seeks damages and declaratory and injunctive relief based upon Defendants' actions that allegedly violated Plaintiff's rights under the First and Fourteenth Amendments of the U.S. Constitution.[3]  *See* Am. Compl. at 7-19, 22-24. Plaintiff attempts to lay out his claims within a framework of three interrelated "Counts," each of which contains multiple claims against multiple Defendants and shares common factual allegations centered on certain "misconducts" (disciplinary reports) that Plaintiff received while at JCCC and the disciplinary proceedings thereon.  *See id.* at 7-19. Because these Counts are overlapping, duplicative, and at times nearly indistinguishable, it is more useful to analyze the pleading through reference to its factual allegations and the legal claims supported and stated therein.  *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Liberally and reasonably construed, Plaintiff's Amended Complaint alleges the following cognizable claims: (1) denial of procedural due process under the Fourteenth Amendment of the United States Constitution; (2) retaliation against Plaintiff for exercising his First Amendment right to speak—i.e., his right to file lawsuits against prison officials; (3) denial of access to the courts; and (4) conspiracy to deprive Plaintiff of his constitutional rights under § 1983.  *See* Am. Compl. at 2-4 ("Nature of Case," Part

---

[3] Plaintiff also cites the Fifth Amendment in connection with his due process claim.  As a state prisoner, however, his due process challenges implicate his rights under the Fourteenth Amendment, not the Fifth Amendment.  *See, e.g.*, *Parnisi v. Colo. State Hosp.*, No. 92-1368, 1993 WL 118860, at *1 (10th Cir. Apr. 15, 1993).

B(1)-(3)); *id.* at 7-10 ("Count I," Part C(1)(A)(1), (2) ¶¶ 1-21); *id.* at 7, 11-16 ("Count II," Part C(1)(B)(1), (2) ¶¶ 1-37); *id.* at 17-19 ("Count III," Part C(1)(C)(1), (2) ¶¶ 1-13)).[4]

Plaintiff's factual allegations are as follows. Plaintiff alleges that soon after he arrived at JCCC in March 2011,[5] he overheard Defendant Guffy telling two other inmates that Plaintiff "liked filing grievances and law suits," that she "was going to get him," and "that they should not hang around him, because his stay there wouldn't be long." *See id.* at 2 (internal quotation marks omitted); *see also id.* at 9 (recounting this story with slightly different wording). Later one of the inmates conveyed to Plaintiff that Defendant Guffy "'absolutely'" did not like Plaintiff and that Defendant Guffy was taking Plaintiff's lawsuits personally. *Id.* at 9. Defendant Guffy told other inmates that she just "love[s] it when a plan comes together" and specified that she was referring to Plaintiff. *Id.* (internal quotation marks omitted). A JCCC staff official told Plaintiff that the staff had been briefed on how Plaintiff liked filing actions against prison personnel and that Plaintiff had "hit close to home" and "got[ten] one of theirs." *Id.* (internal quotation marks omitted). Plaintiff alleges that he understood the staff official to be referring to

---

[4] As outlined below in Parts II and III, Defendants seek dismissal only of the first and second of these claims. Thus, to the extent Plaintiff is raising claims for denial of access to the courts and for conspiring to deprive Plaintiff of his constitutional rights, these claims are not assessed herein and are unaffected by the undersigned's recommended disposition of Defendants' Partial Motion to Dismiss.

[5] Plaintiff refers to this March 2011 transfer as "retaliatory" but does not pursue any claims on the basis of being moved to JCCC. *See* Am. Compl. at 2, 15; *see also id.* at 8 (asserting transfer was "due to filing law suits against Prison Officials").

*Whitmore v. Mask*, CIV-2011-202-M (W.D. Okla. filed Feb. 25, 2011), in which Defendant Morton was one of the named defendants. *See* Am. Compl. at 9.

Plaintiff alleges that approximately three months after he heard Defendant Curry asking another staff member about Plaintiff, Defendant Curry wrote a misconduct falsely claiming that Plaintiff had battered her in the doorway to the facility's kitchen on June 20, 2011 ("Misconduct #1" or "Battery-on-Staff Misconduct"). *See id.* at 7, 8, 11. Plaintiff alleges that as result of Defendant Curry's submitting the false misconduct, Plaintiff was found guilty at a disciplinary hearing and spent approximately 45 days in "SHU" (segregated housing), was demoted to "Level 1" for 90 days, and lost 365 days of earned credits.[6] *See id.* at 8. Plaintiff contends that on July 12, 2011, during a disciplinary hearing on Plaintiff's Misconduct #1, Defendant Rogers claimed to have looked at the JCCC facility's video monitors and found that none of the monitors would have shown footage of the kitchen door. *See id.* at 7, 11. Plaintiff disputes this alleged finding, asserting that Defendant Durfey, the investigator of the battery-on-staff incident, told Plaintiff "that she viewed the incident and [had] seen the incident, but that it was a pan view." *Id.* at 11. Plaintiff requested the allegedly exculpatory video footage from Defendant Durfey. *Id.* at 8. When Plaintiff presented "documentary evidence" to Defendant Durfey in the form of his statements of the incident, Defendant Durfey showed

---

[6] Pursuant to Title 57, Section 138 of the Oklahoma Statutes, prisoners in Oklahoma earn credits, for good conduct and other considerations, that serve to reduce their terms of imprisonment. Okla. Stat. tit. 57, § 138; *Ali v. Taylor*, 528 F. App'x 918, 919 (10th Cir. 2013). One earned credit equates to one fewer day in prison. Okla. Stat. tit. 57, § 138(A). Credits are awarded based upon the "class level" to which the prisoner is assigned. *Id.* § 138(B), (D).

the statements to Defendant Curry—which Plaintiff contends violated her duties as a "neutral investigator." *See id.* Based on the documentary evidence, Defendant Curry wrote a second incident report that caused Plaintiff to be found guilty of the false battery-on-staff charge in Misconduct #1, although the second report conflicted with the first. *Id.* at 8, 11. Plaintiff additionally alleges that Defendant Rogers "acted more like a District Attorney" during the hearing by cross-examining witness statements. *Id.* at 11. Defendant Rogers also expressly stated that he would not be like the officials at Plaintiff's prior facility, whose misconducts Plaintiff had successfully appealed. *See id.* at 12.

During a rehearing after Plaintiff was found guilty of the battery-on-staff charge in Misconduct #1, J. Gwinn, a different hearing officer, found Plaintiff not guilty, "stating that the video evidence did not support the written reports." *Id.* at 12. Defendant Dowling then ordered a second rehearing. *Id.* at 12, 19. Mr. Gwinn told Plaintiff that the video evidence had proved the officer reports to be wrong, but that Mr. Gwinn was "not getting involved with it, because [there are a lot] of people that don't like [Plaintiff]." *Id.* at 12. Defendant Rogers denied Plaintiff the opportunity to present the video footage during any of the rehearings, stated to Plaintiff that he did not have to review or consider the video footage, made comments showing that he was not impartial, and exceeded his authority. *Id.* Defendant Rogers held the second rehearing without Plaintiff present and found Plaintiff guilty. *Id.* at 12. Defendant Dowling affirmed, but the Warden reversed the verdict and ordered a third rehearing. *Id.* at 12, 19.

Plaintiff next contends that on August 15, 2011, he received a "false" misconduct report for extortion from Defendant Guffy and was placed into segregated housing ("Misconduct #2" or "Extortion Misconduct"). *See id.* at 9, 10. Plaintiff alleges, as to this misconduct, that Defendant Guffy failed to provide adequate notice, provide sufficient detail, and assess the reliability or credibility of a confidential informant. *See id.* at 10. This informant told Plaintiff that Defendant Guffy coerced and intimidated him into saying that Plaintiff extorted him. *Id.*

Plaintiff then asserts that on September 21, 2011, another offender received permission to lend his shaver to Plaintiff to shave his beard. *Id.* at 10. As soon as Plaintiff had the shaver, a staff official searched Plaintiff's bag and "wr[o]te [him] up for . . . bartering" ("Misconduct #3" or "Bartering Misconduct"). *Id.* at 10; *see also id.* at 13-14 (referring to "possession of contraband misconduct"). Plaintiff claims: "Offenders are never written up for anything like this." *Id.* at 10. During the investigation of Misconduct #3, Plaintiff requested video footage to prove that permission had been obtained for Plaintiff to use the other inmate's shaver. *Id.* Defendant Page "ignored" and refused to write down Plaintiff's request on the investigator's report; so Plaintiff wrote the request himself. *Id.* Defendant Page nonetheless "failed to perform his duty and preserve the requested video evidence," which "would have proved [Plaintiff's] innocen[c]e." *Id.*

Relevant to Plaintiff's claims of retaliation, denial of access to the courts, and conspiracy, the Amended Complaint alleges that the misconducts lodged against him were a retaliatory "subterfuge" to justify Plaintiff's placement into segregated housing.

*See id.* at 3-4. Plaintiff asserts that every instance he was placed into segregated housing occurred immediately after Plaintiff had requested copies and mailing of legal documents connected with his multiple lawsuits against prison officials, including Defendant Morton. *See id.* at 3-4. Plaintiff asserts that while he was placed in segregated housing, Defendant Guffy would interfere with his legal mail and thereby cause judges to issue rulings "denying the case." *See id.* at 3-4, 13-16 (citing specific lawsuits filed by Plaintiff). Plaintiff additionally makes references to Defendant Guffy's actions being part of a "plan" to ensure that "the State/Respondent received favorable rulings, in two of the Plaintiff's cases," as well as a "conspir[acy]" among Defendants sharing a "'close'" relationship to deprive Plaintiff of his constitutional rights. *See id.* at 2-4, 19. In connection with these allegations, Plaintiff refers to a fourth misconduct, which was "ordered" by Defendant Guffy and accused Plaintiff of disobeying an order. *See id.* at 13, 15-16. Plaintiff contends that Defendant Guffy prevented Plaintiff from timely filing an appeal related to this misconduct by taking him to a holding cell when he tried to request copies for mailing and otherwise interfered with his administrative appeals, his legal mail, and his use of the law library. *See id.* at 3-4, 14-16.

## STANDARD OF REVIEW

While the Court construes a pro se litigant's pleadings liberally, all parties must adhere to applicable procedural rules. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). Under such rules, the plaintiff must state a claim upon which relief may be granted, i.e., the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court

reviewing the sufficiency of a complaint "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997).

Plaintiff has attached evidence of matters outside of the pleadings to his Response to Defendants' Partial Motion to Dismiss. *See* Pl.'s Resp. Exs. (Doc. No. 51-1). In addition, Defendants have filed a Special Report and an amendment thereto (Doc. Nos. 27, 34), in accordance with the Court's orders (Doc. Nos. 12, 26) and *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). The undersigned has excluded these and other matters outside the pleadings from consideration of the Partial Motion to Dismiss and has not treated Defendants' Motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998).

## ANALYSIS

## I.    Section 1983 Claims for Damages Relief in Defendants' Official Capacities

### A.  *Standard for Dismissal*

Citing the Eleventh Amendment and Federal Rule of Civil Procedure 12(b)(1), Defendants move to dismiss Plaintiff's claims to the extent they seek money damages from Defendants in their official capacities as ODOC employees. *See* Defs.' Mot. to Dismiss at 4-6; U.S. Const. amend. XI; Fed. R. Civ. P. 12(b)(1); Am. Compl. at 1-2, 5-6. The Court therefore is obligated to address whether Defendants accordingly enjoy immunity from suit. *See U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008) (noting that if a state defendant raises the issue, "addressing the threshold jurisdictional matter [is] obligatory"); *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558-59

(10th Cir. 2000) (holding that Eleventh Amendment immunity presents a jurisdictional bar when effectively asserted). In moving to dismiss for lack of subject matter jurisdiction, Defendants present a "facial" attack on the Amended Complaint—questioning its sufficiency but not the veracity of factual allegations upon which subject matter jurisdiction may depend. *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995); Defs.' Mot. to Dismiss at 4-6. Accordingly, for the purposes of this subject matter jurisdiction analysis, the undersigned presumes the Amended Complaint's factual allegations to be true. *See Holt*, 46 F.3d at 1002.

  *B. Application of Standard to Plaintiff's Allegations*

  Pursuant to the doctrine of sovereign immunity, as adopted in the Eleventh Amendment, a federal court may not hear a claim brought by a private citizen against a U.S. state unless the immunity is abrogated by Congress or unequivocally waived by the state. U.S. Const. amend XI; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 65 (1996). The State of Oklahoma has not waived its relevant Eleventh Amendment immunity from suit in federal courts. *See Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 589 (10th Cir. 1994), *overruled on other grounds by Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1194 (10th Cir. 1998); *see also Hemphill v. Jones*, No. CIV-11-1192-HE, 2012 WL 7059643, at *3 (W.D. Okla. Oct. 31, 2012) (report and recommendation of Roberts, J.), *adopted*, 2013 WL 501353 (W.D. Okla. Feb. 11, 2013). Nor has Congress abrogated state immunity through enactment of 42 U.S.C. § 1983. *See Quern v. Jordan*, 440 U.S. 332, 342-45 (1979). Thus, the State of Oklahoma's Eleventh Amendment immunity from § 1983 claims in federal court remains intact.

Eleventh Amendment immunity applies to any state agency that is considered "an arm of the state." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). A defendant's status as an arm of the state is a question of federal law, but courts make this determination by analyzing the "nature of the entity created by state law." *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007) (internal quotation marks omitted). Here, although not named as a defendant, the relevant state agency is ODOC because Defendants were employed by that agency during the circumstances giving rise to this lawsuit. *See* Am. Compl. at 1-2, 5-6; Defs.' Mot. to Dismiss at 5. The Tenth Circuit has stated that it considers ODOC an arm of the State of Oklahoma. *See Eastwood v. Dep't of Corr. of State of Okla.*, 846 F.2d 627, 631-32 (10th Cir. 1988) (concluding, in accordance with party's concession, that ODOC was entitled to Eleventh Amendment immunity as an arm of the state). Furthermore, ODOC's powers and budgetary responsibilities establish that it is an arm of the State of Oklahoma. *See, e.g.*, Okla. Stat. tit. 57, §§ 502-504, 505-508, 509, 510; *id.* tit. 62, §§ 34.42, 34.50-.52, 34.57. Thus, ODOC is protected from suit in federal court by Eleventh Amendment immunity. *See also Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765-66 (2002); *ANR Pipeline Co.*, 150 F.3d at 1187.

Such Eleventh Amendment immunity extends to claims against ODOC employees who are sued in their official capacities. "[I]t is well-established that 'the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state.'"

*Peterson v. Lampert*, 499 F. App'x 782, 786 (10th Cir. 2012) (quoting *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994)); *see also Edelman*, 415 U.S. at 663. Further, Plaintiff represents in his Response that he is not seeking damages claims against Defendants in their official capacities. Pl.'s Resp. (Doc. No. 51) at 1, 3-6. Accordingly, to the extent the claims of the Amended Complaint seek monetary relief from Defendants in their official capacities, these claims are barred and should be dismissed because, based on Eleventh Amendment immunity, the Court lacks subject matter jurisdiction over such claims.[7]

---

[7] Defendants do not specifically address Plaintiff's request for declaratory judgment. *See* Defs.' Mot. to Dismiss; Am. Compl. at 22-23. Further, Defendants' sole mention of Plaintiff's express claim for injunctive relief appears in a two-sentence footnote, conclusorily asserting that such relief is "unwarranted" under the (unexplained) *Ex parte Young* exception because (unspecified) "facts of his case indicate that he does not seek to remedy an ongoing constitutional violation." *See* Defs.' Mot. to Dismiss at 6 n.2 (citing *Ex parte Young*, 209 U.S. 123 (1908); *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012)). To the contrary, Plaintiff requests as injunctive relief, among other things, an order for certain state employees to learn their duties so that inmates may enjoy/exercise their rights to due process and for Defendant Morton to "stop rubber stamping" inmates' administrative filings. *See* Am. Compl. at 23. These contentions may be subject to dismissal on other bases but, in combination with the relevant factual allegations, certainly constitute requests to remedy ongoing and prospective violations of federal law. *See Muscogee (Creek) Nation*, 669 F.3d at 1166, 1167-68. To the extent Defendants' request for injunctive relief constitutes an argument for dismissal, it should be denied, at least as currently presented. *Cf. Aquila, Inc. v. C.W. Mining*, 545 F.3d 1258, 1265 n.3 (10th Cir. 2008) ("It is not our role to play the part of counsel by making an argument for a party as well-represented as CWM that it has chosen not to make for itself.").

## II.     Section 1983 Claims Against Defendants in Their Individual Capacities

### A.  *Standard for Dismissal*

Defendants additionally move to dismiss certain of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  *See* Fed. R. Civ. P. 12(b)(6); Defs.' Mot. to Dismiss at 1, 6-15.   In analyzing a Rule 12(b)(6) motion the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).  A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).   Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief.  *Iqbal*, 556 U.S. at 679.

"[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (1991); *see also Whitney*, 113 F.3d at 1173-74.  Whether a complaint contains sufficient facts to avoid dismissal is context-specific and is determined through a court's application of "judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

B. *Whether Plaintiff's Claims Regarding Misconduct #1 Are Barred by* Heck v. Humphrey

Citing *Heck v. Humphrey*, 512 U.S. 477 (1994), Defendants move to dismiss Plaintiff's procedural due process and retaliation claims relating to his Battery-on-Staff Misconduct of June 20, 2011.[8] *See* Defs.' Mot. to Dismiss at 6-10. In *Heck*, the Supreme Court held that when a prisoner seeks damages in a suit filed pursuant to 42 U.S.C. § 1983, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *See Heck*, 512 U.S. at 487. The Supreme Court has since applied *Heck* to decisions in prison disciplinary proceedings, holding that a claim for damages or declaratory relief brought by a state prisoner challenging the validity of the procedures used to deprive him of good-time credits is not cognizable under § 1983 unless the prisoner can demonstrate the sanction has previously been invalidated. *See Edwards v. Balisok*, 520 U.S. 641, 645-648 (1997).

Here, Plaintiff is alleging that prison officials violated his due process rights when they convicted him of battery on staff as cited in Misconduct #1, because such conviction was the product of retaliatory motive, false statements, and a hearing in which he was not

---

[8] Dismissing a claim under *Heck* because the claim is premature implicates subject-matter jurisdiction; however, the Tenth Circuit has indicated that generally "a dismissal under *Heck* is for failure to state a claim, which falls under Rule 12(b)(6)." *Mendia v. City of Wellington*, 432 F. App'x 796, 797 n.1 (10th Cir. 2011) (citing *Hafed v. Fed. Bur. of Prisons*, 635 F.3d 1172, 1178 (10th Cir. 2011); *see also, e.g.*, *Higgins v. City of Tulsa, Okla.*, 103 F. App'x 648, 650-51 (10th Cir. 2004).

permitted to present certain video evidence or to ask certain questions. *See* Am. Compl. at 7-8, 11-12. Plaintiff's claims regarding Misconduct #1 clearly challenge the validity of the disciplinary proceeding and the resulting disciplinary sanctions—including the alleged loss of earned good-time credits—as he contends that his conviction was based on false and incomplete evidence. *See Edwards*, 520 U.S. at 646 ("The principal procedural defect complained of by [the plaintiff prisoner] would, if established, necessarily imply the invalidity of the deprivation of his good-time credits."). Plaintiff does not allege that the disciplinary proceeding for Misconduct #1 has been finally reversed, expunged, or declared invalid; to the contrary, Plaintiff alleges that his conviction was overturned upon a first rehearing but then improperly reinstated after a second rehearing. *See* Am. Compl. at 12. Further, the undersigned takes judicial notice that Plaintiff was denied relief by the District Court of Oklahoma County on his petition for judicial review of his conviction of the Battery-on-Staff Misconduct and that this denial was affirmed by the Oklahoma Court of Criminal Appeals.[9]

Plaintiff responds that his claims regarding the invalidity of Misconduct #1 should not be dismissed because courts will allow 28 U.S.C. § 2241 habeas corpus claims challenging a loss of good-time credits to be brought in the same action as § 1983 claims. *See* Pl.'s Resp. at 1, 7. While this may be true in some circumstances, the court also

---

[9] *See Whitmore v. Dep't of Corr.*, No. CV-2011-1887, Order Denying Relief on Petition (Okla. Cnty., Okla. Dist. Ct. Jan. 3, 2012), *aff'd*, Order (Okla. Crim. App. Mar. 21, 2012) (dockets publicly available through www.oscn.net). *See generally Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (noting that courts may consider judicially noticeable matters when ruling on a Rule 12(b)(6) motion to dismiss); Fed. R. Evid. 201 (governing judicial notice of adjudicative facts).

takes judicial notice of the fact that Plaintiff is separately challenging the Battery-on-Staff Misconduct and related administrative conviction through a § 2241 petition for writ of habeas corpus, currently pending in this Court. *See Whitmore v. Dowling*, No. CIV-13-463-R (W.D. Okla. filed May 6, 2013).

Because it is clear from the face of the Amended Complaint and from judicially noticeable materials that the relevant prison disciplinary proceeding has not already been invalidated, the undersigned finds that Plaintiff has failed to state a claim for relief under 42 U.S.C. § 1983. Accordingly, Plaintiff's procedural due process and retaliation claims for damages and for declaratory and injunctive relief, to the extent they imply the invalidity of the Battery-on-Staff Misconduct issued June 20, 2011, and Plaintiff's administrative conviction thereon, are barred as premature and should be dismissed without prejudice. *See Fottler v. United States*, 73 F.3d 1064, 1065 (10th Cir. 1996) ("When a § 1983 claim is dismissed under *Heck*, the dismissal should be without prejudice."); *Lawson v. Engleman*, No. 03-7012, 2003 WL 21300347, at *1 n.2 (10th Cir. June 6, 2003) (concluding that a prisoner's claims for declaratory and injunctive relief as well as for money damages were barred under *Heck*).

### C. Whether Plaintiff Has Failed to State a Claim upon Which Relief Can Be Granted on His Remaining Procedural Due Process and Retaliation Claims

Defendants further move to dismiss Plaintiff's remaining procedural due process and retaliation claims—which are based upon Defendants' actions taken with respect to Misconducts #2 and #3, i.e., the Extortion Misconduct and the Bartering Misconduct—

for failure to state a claim upon which relief can be granted under Rule 12(b)(6).  *See* Defs.' Mot. to Dismiss at 10-12.

1.  <u>Procedural Due Process Claim</u>

In alleging his procedural due process claim, Plaintiff asserts that his Fourteenth Amendment due process rights were violated by Defendants in the course of performing their duties related to various disciplinary proceedings on Misconducts #2 and #3.  "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972).  As the Tenth Circuit has explained in connection with a similar § 1983 lawsuit filed by Plaintiff:

> To recover on his due process claims, Whitmore must first establish that, as a result of these challenged disciplinary proceedings, he was deprived of an interest protected by due process.  None of the sanctions he received as a result of these disciplinary proceedings, which included placement in administrative segregation . . . and fines, implicates a liberty interest.  They did not "inevitably affect the duration of his sentence" nor "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life[.]"

*Whitmore v. Hill*, 456 F. App'x 726, 728-29 (10th Cir. 2012) (first alteration in original) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995)).

Here, Plaintiff alleges that he was subject to short-term placement in segregated housing, which is a sanction that courts generally have found does not implicate a liberty interest.  *See* Am. Compl. at 3 (alleging placement in segregation "for hours"), 8 (alleging Plaintiff spent approximately 45 days in segregation); *see, e.g.*, *Hill*, 456 F. App'x at 728; *Sandin*, 515 U.S. at 485-86; *Grossman v. Bruce*, 447 F.3d 801, 806 (10th Cir. 2006).  *But*

*see* Am. Compl. at 15 (alleging being stripped naked and then left barefoot in "a very cold holding cell").[10]   The Tenth Circuit relatedly has held in habeas cases that under certain circumstances, a reclassification of credit-earning status that is a mandatory and automatic sanction of a misconduct conviction may inevitably affect the duration of a prisoner's sentence and thereby implicate the prisoner's liberty interest.  *See, e.g.*, *Wilson v. Jones*, 430 F.3d 1113, 1118-24 (10th Cir. 2005); *Ali*, 528 F. App'x at 920-21.  *But cf. Hill*, 456 F. App'x at 728 (holding that sanctions including "reduction in [credit-earning] classification" did not implicate a liberty interest).  The Amended Complaint specifically alleges a reclassification only in regard to Misconduct #1, but it reasonably can be inferred that a reclassification would have been implemented, if required under relevant ODOC misconduct procedure, with respect to Plaintiff's other Misconducts.  Plaintiff in his varied allegations has to at least some extent alleged facts that would implicate a protected liberty interest.[11]

---

[10] Further, Tenth Circuit authority reflects that Plaintiff's protected property interests may be implicated by any imposition of fines in these prison disciplinary proceedings.  *See Hill*, 456 F. App'x at 729; *Anderson v. Cunningham*, 319 F. App'x 706, 711 (10th Cir. 2009).  Although the Amended Complaint does not allege that such fines were assessed, Plaintiff asserted in response to a previous motion to dismiss that he received fines "[i]n most of the misconducts."  *See* Pl.'s Resp. to Defs.' First Mot. to Dismiss (Doc. No. 36) at 6.

[11] However, despite his strong efforts, Plaintiff cannot rely upon prison officials' purported failure to adhere to applicable ODOC procedure as the basis for a claimed deprivation of a liberty interest, absent the allegation of facts sufficient to support an inference that any failure to adhere to these procedures imposed "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *See Sandin*, 515 U.S. at 484; *see, e.g.*, Am. Compl. at 7, 8, 10, 12; *cf. Pettigrew v. Zavaras*, No. 12-1146, 2014 WL 3733975, at *6 (10th Cir. July 30, 2014) ("[Plaintiff] is attempting to alchemically transform a purported entitlement to certain *procedures* into a

The undersigned must next determine whether Plaintiff has sufficiently alleged a deprivation of his procedural due process rights to survive Rule 12(b)(6). To that end, the relevant standard is as follows:

> [The inmate] must further show that the process afforded him was deficient. In the context of prison disciplinary proceedings, an inmate is not entitled to the full panoply of procedural protections afforded a defendant in a criminal prosecution. Due process, instead, requires that the inmate facing disciplinary charges 1) be given advance written notice of the charges, 2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense, and 3) a written statement from the factfinder of the evidence he relied upon and the reason for the disciplinary action. There must also be "some evidence in the record" to support a disciplinary conviction.

*Hill*, 456 F. App'x at 728 (citations omitted) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); citing and quoting *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985)).

The factual allegations of the Amended Complaint are sufficient to state a plausible claim that Plaintiff did not receive adequate procedural due process in connection with his disciplinary proceedings related to Misconducts #2 and #3. *See* Am. Compl. at 10, 13-14. In particular, Plaintiff's allegations for Misconduct #2 that he did not receive adequate advance notice of the charges and that the limited evidence supporting his conviction—the "some evidence in the record"—was obtained through coercion, and Plaintiff's allegation for Misconduct #3 that he was denied an opportunity

---

constitutionally protected *liberty* interest; however, controlling precedent makes clear that such an attempt must end in failure."); *Montero v. Meyer*, 13 F.3d 1444, 1447 (10th Cir. 1994) ("Whether an interest created by state law rises to the level of a 'liberty interest' protected by the Due Process Clause of the Fourteenth Amendment is a matter of federal law.").

to present documentary evidence, plausibly support a claim of deprivation of due process rising to the level of a constitutional violation. *See Wolff*, 418 U.S. at 566; *Hill*, 472 U.S. at 454; Am. Compl. at 10, 13-14. Defendants' suggestion that the Court examine the nature and quality of the evidence presented at the disciplinary proceedings to reach a legal conclusion as to whether the "some evidence" standard is met, *see* Defs.' Mot. to Dismiss 11-12, is one better suited for summary judgment. Assumed to be true and viewed in the light most favorable to Plaintiff, as required, the factual allegations of the Amended Complaint raise Plaintiff's right to relief "above the speculative level." *See Bell Atl. Corp.*, 550 U.S. at 555; *Burnett*, 706 F.3d at 1235. Defendants' request to dismiss Plaintiff's procedural due process claim with regard to Misconducts #2 and #3 should be denied.[12]

### 2. Retaliation Claim

Prison officials may not retaliate against an inmate on account of, or otherwise harass an inmate in retaliation for, the inmate's exercise of his constitutional rights. *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). "This principle applies even where the action taken in retaliation would be otherwise permissible." *Id.* at 948. Nevertheless, in reviewing a prisoner's claim of retaliation, "it is not the role of the

---

[12] Although Defendants nominally move to dismiss Plaintiff's due process and retaliation claims to the extent they are based upon Defendants' conduct associated with a fourth misconduct referred to in the Amended Complaint, the allegations regarding this fourth misconduct are most reasonably construed as relevant to and supportive of Plaintiff's access to the courts claim, not his due process and retaliation claims. *See* Am. Compl. at 13, 15-16; Defs.' Mot. to Dismiss at 12. The undersigned has analyzed the sufficiency of the pleading pursuant to that framework.

federal judiciary to scrutinize and interfere with the daily operations of a state prison."

*Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (citing *Turner v. Safley*, 482

U.S. 78 (1987)). "Obviously, an inmate is not inoculated from the normal conditions of

confinement experienced by convicted felons serving time in prison merely because he

has engaged in protected activity." *Id.* Thus, to prevail on a retaliation claim, a prisoner

must show that the challenged actions would not have occurred "but for" a retaliatory

motive. *Id.*; *see also Brown v. Wyo. Dep't of Corr. State Penitentiary Warden*, 234 F.

App'x 874, 877-78 (10th Cir. 2007) ("[A] prisoner claiming retaliation must allege

specific facts showing retaliation [on account] of the exercise of the prisoner's

constitutional rights, and he must prove that 'but for' the retaliatory motive, the incidents

to which he refers, including the disciplinary action, would not have taken place."

(second alteration in original) (citation and internal quotation marks omitted)).

Plaintiff recites in the Amended Complaint that actions were taken against him in

retaliation for Plaintiff's filing of lawsuits against prison officials, particularly by (1)

limiting of law library privileges and assessing "false" misconducts against Plaintiff as a

subterfuge for putting him into segregated housing, thereby impeding his ability to

participate in his legal cases; and (2) Defendant Guffy interfering with Plaintiff's legal

mail and with his processing of documents for his legal cases. *See* Am. Compl. at 2-4,

13-16, 19. Plaintiff further alleges that multiple Defendants had knowledge of his other

lawsuits and had intimated that they were displeased with Plaintiff's legal endeavors and

were going to take some action. *See id.* at 2, 8, 9, 12, 17, 18. In addition, the Amended

Complaint can reasonably be construed as alleging that Plaintiff attributes the multiple

alleged due process violations associated with Misconducts #2 and #3 to Defendants' retaliatory motives. *See id.* at 4, 9-10, 13-14, 18-19.

Thus, to the extent Plaintiff is asserting an independent retaliation claim in connection with Misconducts #2 and #3, the Amended Complaint does contain factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *See Bell Atl. Corp.*, 550 U.S. at 555. Assuming that Plaintiff's serial filing of lawsuits against various prison officials constituted an exercise of his First Amendment rights, Plaintiff cites specific facts—sufficient at least at this Rule 12(b)(6) stage of proceedings—to support his allegations that the allegedly improper investigations and misconduct convictions in Misconducts #2 and #3 were based upon Plaintiff's exercising his right to file lawsuits, rather than the prison officials' legitimate penological interest in preventing and deterring prisoner misconduct. *See Iqbal*, 556 U.S. at 678 (noting that to survive dismissal, a claim must have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

D. *Whether Personal Participation of Certain Defendants Is Adequately Alleged with Respect to the Procedural Due Process and Retaliation Claims*

Defendants assert that for six of the seven Defendants—i.e., all except Defendant Guffy—the Amended Complaint fails to allege facts establishing personal participation in the claimed violations of Plaintiff's federal rights. *See* Defs.' Mot. to Dismiss at 12-15. Defendants move that Plaintiff's procedural due process and retaliation claims be dismissed as against these six Defendants. *Id.*

To state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). When a defendant is sued in his or her individual capacity under § 1983, the complaint must meet specific requirements as to each defendant. First, the plaintiff must allege facts that establish the defendant's "personal involvement or participation" in the alleged violation of a federal right. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996); *see also Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). Second, the plaintiff must allege facts that establish a causal connection between the acts of that particular defendant and the alleged violation of a federal right. *See Iqbal*, 556 U.S. at 676; *Pahls v. Thomas*, 718 F.3d 1210, 1225-26, 1228 (10th Cir. 2013). Finally, the plaintiff must allege facts to establish that the defendant acted with the state of mind required for the alleged underlying federal rights violation. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986). These requirements equally apply when a supervisor is alleged to be responsible for the misconduct of a subordinate. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767-69 (10th Cir. 2013) (reiterating that § 1983 claim against supervisor cannot be premised on vicarious liability); *see also Iqbal*, 556 U.S. at 676-77; *Dodds v. Richardson*, 614 F.3d 1185, 1199 n.8 (10th Cir. 2010) (noting that elements of liability may overlap).

1. Defendant Mike Rogers

Plaintiff alleges that Defendant Rogers was the hearing officer at the initial hearing on Plaintiff's Battery-on-Staff Misconduct #1 and, in fulfilling that role: "was not

impartial"; tried to cover up for the investigator's breach of duty; wrongly claimed that video monitors would not have shown the JCCC kitchen door and, thus, that the disputed video footage would not have been helpful to Plaintiff; made no attempt to see the video footage; allowed the use of two conflicting incident reports; and "acted more like a District Attorney." *See* Am. Compl. at 2, 7, 11-12. Defendant Rogers allegedly stated: "I am not like those [staff members] at LCF" that had been the subject of Plaintiff's misconduct appeals in state court; "I am going to be crossing all the T's and dotting all the i's." *Id.* at 12. Plaintiff also alleges that Defendant Rogers also exceeded his authority by ordering a second rehearing after finding Plaintiff guilty at the initial hearing and held the second rehearing without Plaintiff present. *See id.* To the extent Plaintiff alleges procedural due process and retaliation claims necessarily implying the invalidity of Misconduct #1, these claims should be dismissed as to Defendant Rogers because they are barred as premature by *Heck v. Humphrey*. *See supra* Part II(B).

Plaintiff additionally alleges that Defendant Rogers was the hearing officer on his Misconduct #2, for extortion, and: did not act impartially; was argumentative; and "said [Plaintiff] said something during the hearing that [Plaintiff] never even said" in the course of finding Plaintiff guilty. *See* Am. Compl. at 13. Plaintiff also alleges that Defendant Rogers was the hearing officer on Plaintiff's Misconduct #3, for possession of contraband, and denied Plaintiff's request for documentary evidence in the form of video footage on the basis that the video did not have audio and therefore would not allow the viewer to hear the officer give permission for Plaintiff to use the other inmate's shaver. *See id.* at 13-14. With respect to Misconducts #2 and #3, Plaintiff's allegations, though

sparse, sufficiently support Defendant Rogers' involvement in the alleged due process and retaliatory violations. *See id.* at 2, 7, 11-14; *Grimsley*, 93 F.3d at 679; *Iqbal*, 556 U.S. at 676; *see also Hill*, 456 F. App'x at 728 (noting that due process requires that an inmate facing disciplinary charges "be given . . . an opportunity, when consistent with institutional safety and correctional goals, to . . . present documentary evidence in his defense"). To that extent, Plaintiff's procedural due process and retaliation claims should not be dismissed as to Defendant Rogers.

### 2. Defendant Kelli Curry

Plaintiff asserts that he overheard Defendant Curry, the kitchen supervisor, asking about Plaintiff and then, a few months later, falsely claiming in Misconduct #1 that Plaintiff had battered her at the JCCC kitchen door. *See* Am. Compl. at 7, 8, 11. With the exception of his general allegations that there was a plan among "Defendants" to do so, Plaintiff does not allege that Defendant Curry otherwise violated his constitutional rights. All procedural due process and retaliation claims necessarily implying the invalidity of Misconduct #1 should be dismissed as to Defendant Curry because they are barred as premature by *Heck v. Humphrey*. *See supra* Part II(B). In addition, due to the lack of any allegation of Defendant's Curry's participation or involvement in Plaintiff's other Misconducts, Plaintiff's remaining procedural due process and retaliation claims should be dismissed as to Defendant Curry. *See Grimsley*, 93 F.3d at 679; *Iqbal*, 556 U.S. at 676.

### 3. Defendant Crystal Durfey

Plaintiff contends that Defendant Durfey, in the course of acting as the investigator on the Misconduct #1 proceedings, allowed Defendant Curry to write a second, conflicting incident report based on documentary evidence presented by Plaintiff and did "not perform[] her duties as a neutral Investigator," causing Plaintiff to be found guilty of the "false charge." *See* Am. Compl. at 8, 11. Based on the *Heck* analysis outlined above in Part II(B), Plaintiff's claims of retaliation and procedural due process violations arising from, and necessarily implying the invalidity of, Misconduct #1 should be dismissed as to Defendant Durfey. Further, due to the lack of any allegation of participation or involvement by Defendant Durfey in Plaintiff's other Misconduct proceedings, Plaintiff's remaining procedural due process and retaliation claims should be dismissed as to Defendant Durfey.

### 4. Defendant Brandy Page

Defendant Page, another investigator, is only alleged to have been involved in Misconduct #3. *See* Am. Compl. at 10. Nevertheless, based on the *Heck* analysis outlined above in Part II(B), to the extent Plaintiff's claims of retaliation and procedural due process violations arise from and necessarily imply the invalidity of Misconduct #1, they should be dismissed as to Defendant Page. Further, Plaintiff's procedural due process and retaliation claims with respect to Misconduct #2 should be dismissed as to Defendant Page based on the lack of any allegation of personal participation or involvement by Defendant Page in that Misconduct proceeding.

Regarding Misconduct #3, Plaintiff alleges that Defendant Page (1) refused to write down Plaintiff's request for documentary evidence in the form of video footage; and (2) after Plaintiff wrote down the request, "failed to perform his duty and preserve the requested video evidence." *See* Am. Compl. at 10. These allegations, taken together with Plaintiffs' allegations regarding a retaliatory plan to improperly convict Plaintiff of misconducts, adequately allow a plausible inference to support Defendant Page's personal involvement such that dismissal on this basis is not warranted. *See Grimsley*, 93 F.3d at 679; *Iqbal*, 556 U.S. 676; *Hill*, 456 F. App'x at 728. Thus, Plaintiff's procedural due process and retaliation claims pertaining to Defendant Page's involvement in Misconduct #3 should not be dismissed at this stage of proceedings.

### 5. Defendant Janet Dowling

Plaintiff contends that Defendant Dowling, as Deputy Warden, ordered a second rehearing after Plaintiff's conviction on Misconduct #1 was overturned at the first rehearing, assigned a "partial hearing" officer (Defendant Rogers) to oversee this hearing, and affirmed guilty findings three times in connection with Misconduct #1. *See* Am. Compl. at 19. Plaintiff further contends that Defendant Dowling has the authority to dismiss or expunge misconducts for due process violations and that Defendant Dowling was put on notice via administrative appeals. *See id.*

Because Plaintiff's due process and retaliation claims against Defendant Dowling are focused upon the allegedly improper Misconduct #1 disciplinary proceedings, they are barred as premature by *Heck*. *See supra* Part II(B). As Plaintiff does not allege that Defendant Dowling took part in the other Misconducts, or participated in the specified

retaliatory planning or acts sufficiently to reasonably infer her participation or involvement, all remaining procedural due process and retaliation claims should be dismissed as to Defendant Dowling.

### 6. Defendant Debbie Morton

Plaintiff claims that Defendant Morton previously worked at JCCC and is close to Defendants who still work there. *See* Am. Compl. at 4, 19. Plaintiff alleges that Defendant Morton, in her role as the ODOC Director's Designee, "rubber stamped" Plaintiff's administrative appeals of his misconducts and failed to perform her duties to cure due process violations. *See* Am. Compl. at 18-19. Plaintiff further alleges that Defendant Morton has seven times "affirm[ed] constitutionally infirm convictions during the administrative appeals" and then, after Plaintiff appealed the convictions in state court, reversed and ordered a rehearing. *See* Am. Compl. at 18. Defendant Morton is alleged to have the authority to dismiss or expunge misconducts for due process violations and to have been put on notice through administrative appeals. *See* Am. Compl. at 19.

Here, as to Plaintiff's asserted procedural due process violations, Plaintiff's broad allegations do not provide sufficient facts to establish the requisite elements of personal involvement, causation, and state of mind as to Defendant Morton, whether personally or in her supervisory position. Further, Defendant Morton is not alleged to have been involved in the retaliatory plan to keep Plaintiff segregated and thereby prevent him from prosecuting his lawsuits. All procedural due process and retaliation claims should be dismissed to the extent they are raised against Defendant Morton.

### III.    Plaintiff's Motion to Supplement His Pleading

Plaintiff has filed a Motion for Leave to Supplement his 42 U.S.C. § 1983 Amended Complaint (Doc. No. 70).  Through this Motion, Plaintiff seeks to add factual allegations supporting a new claim against Defendant Becky Guffy regarding incidents allegedly transpiring in January 2014.  *See* Pl.'s Mot. to Supplement at 1 n.2; Pl.'s Mot. to Supplement Ex. 1 (Doc. No. 70-1) at 4-10.  In the proposed new allegations, Plaintiff asserts that in January 2014, while Plaintiff was incarcerated at his current facility, the Oklahoma State Penitentiary ("OSP") in McAlester, Oklahoma, Defendant Guffy arrived at OSP and began working there.  *See* Pl.'s Mot. to Supplement Ex. 1 at 4; Notice (Doc. No. 39) (reflecting that Plaintiff was transferred from JCCC to OSP in approximately September 2013).  Plaintiff contends that soon thereafter, Defendant Guffy issued a false, retaliatory misconduct against Plaintiff, resulting in Plaintiff being put in segregated housing and having limited access to the law library; Plaintiff additionally contends that Defendant Guffy has at times caused delays with Plaintiff's legal mail.  *See* Pl.'s Mot. to Supplement Ex. 1 at 6-10.  According to the proposed allegations, Plaintiff received the misconduct on the basis of sending a written threat to cause bodily harm to the OSP Warden and to Defendant Guffy.  *See id.* at 6.  Plaintiff contends that he did not write the threat; rather, a prison official or officials "got another inmate . . . to write the threatening letter, and forge my name and #."  *See id.* at 7 & n.3.

Pursuant to Federal Rule of Civil Procedure 15(d), "the court *may*, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Fed. R. Civ. P.

15(d) (emphasis added). The decision to grant or deny a Rule 15(d) motion to supplement rests within the sound discretion of the district court. *Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001). Though leave is liberally granted, the court may deny leave if good reason exists, "such as prejudice to the defendants," and "the courts typically require some relationship between the original and the later accruing material." *Walker*, 240 F.3d at 1278 (internal quotation marks omitted); 6A Charles Alan Wright et al., *Federal Practice and Procedure* § 1504 (3d ed. 2010); *see also* Wright et al., *supra*, § 1506 (noting that courts balance a variety of competing factors in determining whether to permit supplementation).

Plaintiff did not seek to supplement until 15 months after he filed his original complaint. *See* Compl. (Doc. No. 1, filed Jan. 31, 2013); Pl.'s Mot. to Supplement (Doc. No. 70, filed Apr. 11, 2014); *cf. Walker*, 240 F.3d at 1278-79 (upholding denial of Rule 15(d) motion when discovery had closed and defendant had moved for summary judgment). Although this case has not progressed to the point where granting permission to supplement clearly would cause undue prejudice to Defendants, the later accruing claims would impose additional burdens as to evidence, discovery, and witnesses on all Defendants, given the differences in personnel and internal procedures between JCCC and OSP.[13]

---

[13] While JCCC is in northwestern Oklahoma and lies in Alfalfa County, in the territorial jurisdiction of the Western District of Oklahoma, OSP is a significant distance away in the southeastern part of Oklahoma and lies in Pittsburg County, in the territorial jurisdiction of the Eastern District of Oklahoma. *See* 28 U.S.C. § 116(b), (c).

A more significant concern is the minimal relationship between the supplemental and initial factual allegations and claims. Plaintiff's in his Motion to Supplement glosses over the fact that he wishes to add a claim regarding separate prison officials' actions taken at an entirely different facility, with distinct personnel and internal operations, excepting only the common element of Defendant Guffy's presence. Plaintiff's new claim disputes disciplinary action arising from an alleged coercion by OSP prison officials of an OSP prisoner into committing forgery—a matter and offense entirely unrelated to those alleged in the Amended Complaint. *See* Pl.'s Mot. to Supplement at 4-10; Am. Compl. 2-4, 7-19. Plaintiff's Motion reflects that Defendant Guffy was employed as Acting Deputy Warden at OSP, but Defendant Guffy had been working as a law library supervisor in her capacity as a warden's assistant at JCCC. *See* Pl.'s Mot. to Supplement at 3; Am. Compl. at 5. Further, it is unclear whether Defendant Guffy continues to work at OSP. *See* Pl.'s Mot. to Supplement at 3-4.

In *Klos v. Haskell*, 835 F. Supp. 710 (W.D.N.Y. 1993), *aff'd*, 48 F.3d 81 (2d. Cir. 1995), a pro state prisoner similarly sought to supplement his § 1983 complaint with allegations of retaliatory conduct, including interference with mail, that occurred at correctional facilities other than those named in the prisoner's complaint. *See id.* at 715. The district court denied supplementation due to finding "no linkage between the allegations set forth in each complaint," despite the fact that the prisoner, like Plaintiff here, (1) did not name any new defendants in the proposed supplemental pleading, and (2) alleged that subsequent events occurred in retaliation for the prisoner's prosecution of the underlying § 1983 claim. *See id.* at 714, 715-16 (internal quotation marks omitted);

*see also* Wright et al., *supra*, § 1504 (noting that discretion exercised by courts is similar for supplementation and amendment of pleadings).

In the instant case, because the proposed supplemental allegations are specific to events transpiring at OSP and do not sufficiently relate to this lawsuit, Plaintiff's Motion to Supplement (Doc. No. 70) should be denied.[14] *See Klos*, 835 F. Supp. at 716; Wright et al., *supra*, § 1506 ("[W]hen the matters alleged in a supplemental pleading have no relation to the claim originally set forth and joinder will not promote judicial economy or the speedy disposition of the dispute between the parties, refusal to allow the supplemental pleading is entirely justified.")

## IV.    Plaintiff's Motion for Preliminary Injunction

Plaintiff has filed a motion requesting a temporary restraining order or preliminary injunction against Defendants, Defendants have responded, and Plaintiff has replied. *See* Pl.'s Mot. Prelim. Inj. (Doc. No. 61); Defs.' Resp. (Doc. No. 64); Pl.'s Reply (Doc. No. 69). In this Motion, Plaintiff asserts the same factual allegations—regarding an allegedly forged threat and Defendant Guffy's retaliatory acts at OSP—as those set forth in his proposed supplemental allegations discussed above. *See* Pl.'s Mot. Prelim. Inj. at 1-11; Part III, *supra*. Plaintiff requests that the Court: review the allegedly forged threat to determine whether the handwriting was Plaintiff's and issue an order of unspecified duration to make Defendant Guffy stop interfering with his litigation at OSP or,

---

[14] Although the undersigned has not examined the substantive merits of Plaintiff's supplemental allegations, it would appear that Plaintiff's new claim—challenging the imposition of a January 2014 misconduct and sanctions—may be barred as premature by *Heck v. Humphrey*. *See* Mot. to Supp. Ex. 1 at 4-10; Part II(B), *supra*.

alternatively, "caution or warn the Defendants of their responsibilities and duties where it concerns the Plaintiff." *See* Pl.'s Mot. Prelim. Inj. at 11. Plaintiff's Reply additionally asks that the Court order that a certain "Forensic Document Examiner" assess the relevant documents on the threat-letter misconduct and that the Court assist with obtaining (and, presumably, compensating) this examiner as Plaintiff's expert witness. *See* Pl.'s Reply at 3 & n.3, 16.

Plaintiff's request is properly viewed as seeking a preliminary injunction under Federal Rule of Civil Procedure 65(a) rather than a temporary restraining order ("TRO") under Federal Rule of Civil Procedure 65(b). Rule 65(b) generally contemplates that a TRO would be issued only for a short term and "without written or oral notice to the adverse party or its attorney." *See* Fed. R. Civ. P. 65(b)(1). Because Defendants here had both notice and an opportunity to respond to Plaintiff's Motion for Preliminary Injunction, the Court should treat the request for a TRO as superseded by the alternative request for a preliminary injunction. *See, e.g.*, *Kan. Hosp. Ass'n v. Whiteman*, 835 F. Supp. 1548, 1551 (D. Kan. 1993); *TLX Acquisition Corp. v. Telex Corp.*, 679 F. Supp. 1022, 1028 (W.D. Okla. 1987); *see also* 11A Wright et al., *supra*, § 2951 (3d ed. 2013).

A preliminary injunction grants intermediate relief of the same character as that which may be finally granted. *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945). The Court may not enter a preliminary injunction when the movant seeks intermediate relief beyond the claims of the complaint. *See Stouffer v. Eulberg*, No. CIV-09-320-C, 2010 WL 567998, at *1, *2 & n.3 (W.D. Okla. Feb. 11, 2010) (citing *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) ("[A]

preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action.")).[15] Thus, "the movant must establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010) (internal quotation marks omitted); *see also Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975) ("[The movant] must [establish his right to such relief] by clear proof that he will probably prevail when the merits are tried, so to this extent there is a relation between temporary and permanent relief.").

Assuming that the undersigned's recommendation to deny supplementation is adopted, Plaintiff's Amended Complaint raises no claims relevant to the misconduct received for a threatening letter, or any retaliatory acts taken at OSP, which are the only grounds raised in Plaintiff's request for a preliminary injunction. *Compare* Am. Compl., *with* Pl.'s Mot. Prelim. Inj. Plaintiff therefore has not shown the requisite relationship between Defendants' conduct asserted in the Amended Complaint and the injury claimed in his Motion for a Preliminary Injunction. *See Little*, 607 F.3d at 1251. Thus, a preliminary injunction would be inappropriate to address the allegations regarding a

---

[15] Other circuits are in accord. *See, e.g.*, *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1134 (11th Cir. 2005) ("[I]njunctive relief must relate in some fashion to the relief requested in the complaint."); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (denying a motion for temporary relief "based on new assertions of mistreatment that are entirely different from the claim raised and the relief requested" in the plaintiff's § 1983 lawsuit); *Stewart v. U.S. INS*, 762 F.2d 193, 199 (2d Cir. 1985) (holding that the district court lacked jurisdiction to issue preliminary injunction where movant had presented issues that were "entirely different from those [that] were alleged in his original complaint").

misconduct received and restrictions set in place at a different facility, and the Court should deny the request for injunctive relief as presenting issues, and seeking relief, separate from and unrelated to the allegations raised in Plaintiff's current Amended Complaint.

Even if Plaintiff's request to supplement his pleading is granted, Plaintiff has not met his burden to show that entry of a preliminary injunction is warranted. A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). For entry of a preliminary injunction, the applicant generally must satisfy four elements: (1) a substantial likelihood that he or she will prevail on the merits; (2) irreparable harm unless the restraining order is issued; (3) outweighing of the harm from the threatened injury against the adversary's harm from the preliminary injunction; and (4) the absence of an adverse impact on the public interest. *Kikumura v. Hurley,* 242 F.3d 950, 955 (10th Cir. 2001). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).

A preliminary injunction is characterized as "mandatory" if it affirmatively requires the nonmovant to act in a particular way and, as a result, places the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction. *Id.* at 1261; *Little*, 607 F.3d at 1251. Here, Plaintiff seeks relief that is mandatory—i.e., the entry of Plaintiff's requested relief would affirmatively require Defendants to act in a particular way and would place this Court in a position

where it would be required to provide ongoing supervision. *See* Pl.'s Mot. Prelim. Inj. at 11; Pl.'s Reply at 16; *Schrier*, 427 F.3d at 1261. Plaintiff therefore must meet a "heightened standard" on all four required elements. *See Little*, 607 F.3d at 1251. The preliminary injunction "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *See Schrier*, 427 F.3d at 1259 (internal quotation marks omitted). Plaintiff further must make a "strong showing" both with regard to likelihood of success on the merits and with regard to the balance of harms in order to obtain this disfavored relief. *Id.* at 1261.

With regard to the fourth required element, Plaintiff has not met his heightened burden of demonstrating that the injunction is not adverse to the public interest—the relevant public interest here being deference to prison officials' proper administration of their prison facilities. A federal court considering a motion for injunctive relief affecting the conditions of a prisoner's confinement must give substantial weight to the adverse impact on public safety and on prison operation. *See* 18 U.S.C. § 3626(a)(2); *Stephens v. Jones*, 494 F. App'x 906, 911-12 (10th Cir. 2012). The Supreme Court has declared that courts are not to substitute their judgment on matters of institutional administration for the determinations made by prison officials. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987). Accordingly, courts hesitate to interfere with prison officials' decisions concerning the day-to-day administration of prisons, to which deference must be afforded unless they violate the Constitution or federal law. *See Turner*, 482 U.S. at 84-86.

Even if Plaintiff could succeed on his supplemental claim against Defendant Guffy, the assertions in his Motion do not justify the Court interfering with ODOC's and OSP's disciplinary proceedings and administrative investigation regarding the threatening letter or directing non-defendant prison officials as to whether and how Plaintiff may access the facility law library or be placed into segregated housing. *See* Pl.'s Mot. Prelim. Inj. at 11; Pl.'s Reply at 1-2. Granting the relief Plaintiff seeks would require this Court to intrude directly into the affairs of state prison administration, which for important policy reasons is a step courts should be reluctant to take. *See Turner*, 482 U.S. at 84-86; *cf. Stephens*, 494 F. App'x at 912 (affirming denial of requested injunctive relief as "overbroad and more intrusive than necessary").

Finally, Plaintiff's request for the Court's injunctive relief to assist him in obtaining an expert witness and proving his case is inappropriate and is not supported by application of any of the four relevant factors. *See* Pl.'s Reply at 3 & n.3, 16; *Kikumura*, 242 F.3d at 955. For all of these reasons, Plaintiff's Motion for a Preliminary Injunction should be denied.[16] *See, e.g.*, *Johnson v. Saffle*, No. 99-6148, 2000 WL 130726, at *2 (10th Cir. Feb. 4, 2000) (affirming denial of temporary restraining order in which "the relief requested was not consistent with the public interest").

---

[16] To the extent Plaintiff seeks injunctive relief in the form of federal court interference with pending administrative or state-court appeals on the threat-letter misconduct, granting such a request may be barred as premature by *Heck v. Humphrey* and, further, would implicate significant questions under the Anti-Injunction Act, 28 U.S.C. § 2283, and federal abstention doctrines.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Defendants' Partial Motion to Dismiss (Doc. No. 41) be GRANTED IN PART, as outlined below:

1. Plaintiff's claims seeking money damages under § 1983 against all Defendants in their official capacities should be dismissed without prejudice because, based on Eleventh Amendment immunity, the Court lacks subject matter jurisdiction over such claims.

2. All procedural due process and retaliation claims, and associated requests for declaratory and injunctive relief, challenging the validity of the procedures used in connection with the Battery-on-Staff Misconduct of June 20, 2011, should be dismissed without prejudice pursuant to *Heck v. Humphrey*.

3. Plaintiff's remaining individual-capacity procedural due process and retaliation claims should be dismissed without prejudice:

   a.   As to Defendant Kelli Curry in their entirety;

   b.  As to Defendant Crystal Durfey in their entirety;

   c.  As to Defendant Brandy Page, to the extent the claims are relevant to the Battery-on-Staff Misconduct or the Extortion Misconduct of August 15, 2011, but not as to the claims relevant to the Bartering Misconduct of September 21, 2011;

   d.  As to Defendant Janet Dowling in their entirety; and

   e.  As to Defendant Debbie Morton in their entirety.

The undersigned additionally recommends that:

4.  Plaintiff's Motion for Leave to Supplement (Doc. No. 70) be DENIED; and

5.  Plaintiff's Motion for Preliminary Injunction (Doc. No. 61) be DENIED.[17]

NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by the 5th day of September, 2014, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 15th day of August, 2014.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE

---

[17] In other words, adoption of this Report and Recommendation would leave the following claims for further proceedings and disposition: (1) Plaintiff's claims against all Defendants seeking prospective declaratory and injunctive relief; (2) Plaintiff's claims against all Defendants for denial of access to the courts; (3) Plaintiff's claims for conspiracy to deprive Plaintiff of constitutional rights under § 1983 against all Defendants; and (4) Plaintiff's monetary damages claims for denial of procedural due process and for retaliation against Defendants Rogers and Guffy, and against Defendant Page to the extent these claims are relevant to Misconduct #3, all in their individual capacities and all to the extent they are not dismissed as barred by *Heck*.